UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**VERLESHIA S. ELLIS,**
    **Plaintiff,**

  v.                                            Case No. 14-C-0506

**CITY OF MILWAUKEE, et al.,**
    **Defendants.**
_____

## DECISION AND ORDER

Plaintiff Verleshia Ellis has sued the City of Milwaukee, its chief of police, and three individual police officers under 42 U.S.C. § 1983. She alleges that the individual officers violated her rights under the Fourth and Fourteenth Amendments during the course of an arrest and search of her person, and that the City and the Chief of Police are liable for the violation under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Before me now is the defendants' motion to compel the plaintiff to produce a diagram prepared by a witness at the request of the plaintiff's attorney. The plaintiff contends that the diagram is protected by the attorney work-product doctrine.

According to the allegations of the complaint, on the night of September 21, 2011, one of the officer defendants ordered the plaintiff out of a parked car, conducted a pat-down search of her person, and then handcuffed her and ordered her to wait on a curb for the arrival of a female officer. When the female officer arrived, she pulled the plaintiff's pants down, placed her in the back of a squad car, and conducted a search of her vagina and rectum. The plaintiff alleges that this search was performed in front of members of the public. The plaintiff contends that the initial seizure and pat-down and

1

the ensuing strip and body-cavity search violated her rights under the Fourth Amendment.

Evidence obtained during discovery in this case shows that, on the night the plaintiff was searched, Eddie Johnikin was in the car with the plaintiff. Before the search, Johnikin exited the car and went into a house, where the police arrested him. After his arrest, the police placed Johnikin into the back of a squad car for a period of time before driving him to the police station for booking. According to Johnikin's deposition testimony, he was taken away from the scene before the female officer performed the body-cavity search of the plaintiff.

On August 1, 2013, Jeanette Corbett, an attorney representing the plaintiff, interviewed Johnikin. As part of this interview, Corbett provided Johnikin with a blank piece of paper and asked him to sketch a diagram of the scene where he was arrested and the plaintiff was ultimately searched. Corbett states that she asked Johnikin to draw "some of the specific items that [she] thought could be important to [her] analysis of [the plaintiff's] claims." Corbett Decl. ¶ 5. Johnikin complied with Corbett's request. After Johnikin returned the diagram to her, Corbett wrote on the paper and labelled parts of it. Corbett placed the diagram in her law firm's file relating to the plaintiff's case, where it has remained confidential.

On March 18, 2016, the defendants took Johnikin's deposition. At the deposition, defendants' counsel asked Johnikin to prepare a diagram of the scene, and Johnikin complied. *See* Decl. of James End, Ex. 1. Also at the deposition, defendants' counsel learned that Johnikin had made a diagram during his interview with Corbett. Upon learning of that diagram, the defendants requested that the plaintiff produce it. The

plaintiff and her counsel refused to do so, claiming that it is protected by the attorney work-product doctrine. The defendants then filed the present motion to compel.

The work-product doctrine is codified at Federal Rule of Civil Procedure 26(b)(3)(A), which states that, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . . )." However, materials protected by the work-product doctrine may be discovered if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). "The work-product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 621–22 (7th Cir. 2009).

In moving to compel production of the diagram, the defendants first contend that the diagram is not protected by the work-product doctrine because the diagram is a "purely factual document[] created wholly by a third-party witness." Mot. to Compel at 2. I disagree. Johnikin prepared the diagram at the request of the plaintiff's counsel during an interview that counsel conducted in anticipation of the present litigation. The diagram thus satisfies the three elements of the work-product doctrine: it is (1) a document or tangible thing, (2) prepared in anticipation of litigation or for trial, (3) by or for the opposing party or her attorney. The diagram would satisfy these elements, and thus be protected by the work-product doctrine, regardless of whether the plaintiff's attorney herself wrote on the diagram. Indeed, because Johnikin prepared the diagram

3

in response to the attorney's questions, it may be possible to draw inferences about the attorney's thought processes from the diagram, even though the attorney herself did not write on the diagram. *See* 2 Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 817 (5th ed. 2007) (noting that it may be possible "to infer the direction of the attorney's thinking" even from a verbatim transcript of a witness's statement). Here, however, the plaintiff's attorney herself wrote on the drawing and labeled parts of it, which increases the degree to which the diagram discloses the attorney's thought processes.

The defendants next contend that even if the diagram is protected by the work-product doctrine, they have shown that they have a substantial need for the diagram. However, there were many witnesses besides Johnikin at the scene, and the defendants were able to obtain diagrams from these witnesses. *See* End Decl. Exs. 2–5. The defendants have not explained why the layout of the scene, as it was perceived by Johnikin specifically, is so significant.

Moreover, even if I could conclude that the defendants have a substantial need for Johnikin's perception of the scene, the defendants have failed to identify a substantial need for the specific diagram that Johnikin prepared for plaintiff's counsel. As noted, the defendants obtained their own diagram from Johnikin when they took his deposition. The defendants point out that Johnikin stated at his deposition that, due to a head injury he sustained in an assault and robbery in 1991, he has a poor memory and often cannot recall things. *See* Decl. of Patrick McClain, Ex. A at 12–24. However, so far as it appears from the excerpts from Johnikin's deposition on file with the court, Johnikin did not have any difficulty recalling the location of the items that defendants' counsel asked him to draw. *See* End Decl. Ex. 1 at 67–69. Moreover, because

4

Johnikin sustained the injury that caused his memory problems in 1991, the diagram he prepared at the request of plaintiff's counsel is not any less affected by his memory problems than the diagram he prepared at his deposition. It is true that over time a witness's memory may fade, and that because the diagram Johnikin prepared for plaintiff's counsel was made two years before the diagram the defendants obtained at his deposition, there is some possibility that the earlier diagram is more accurate. But the mere possibility of a faded memory is not sufficient to overcome work-product protections. See *D.O.H. v. Lake Central Sch. Corp.*, No. 2:11-cv-430, 2015 WL 1538804, at *13 (N.D. Ind. April 7, 2015). And by the time plaintiff's counsel interviewed Johnikin, nearly two years had passed since the relevant events occurred. Thus, the plaintiff's diagram was not made while the events were fresh in Johnikin's mind.

Finally, although the defendants have not suggested that they need the work-product diagram for impeachment purposes, I note that the Seventh Circuit is "extremely reluctant to allow discovery of attorney work product simply as impeachment evidence." *Sandra T.E.*, 600 F.3d at 622.

Accordingly, **IT IS ORDERED** that the defendants' motion to compel is **DENIED**.

Dated at Milwaukee, Wisconsin, this 14th day of June, 2016.

    s/ Lynn Adelman
    _____
    LYNN ADELMAN
    District Judge

5

Case 2:14-cv-00506-LA   Filed 06/14/16   Page 5 of 5   Document 39